# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 18-1674V
Filed: June 10, 2020
(Not to be published)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| MARTHA WALKER, | * | |
| | * | |
| Petitioner, | * | Findings of Fact; Onset; |
| | * | Shoulder Injury Related to Vaccine |
| v. | * | Administration ("SIRVA"). |
| | * | |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Phyllis Widman, Jacobs & Barbone, Atlantic City, NJ,* for Petitioner.
*Sarah Duncan, U.S. Department of Justice, Washington, DC,* for Respondent.

### RULING ON ONSET[1]

**Oler**, Special Master:

    On October 30, 2018, Martha Walker ("Ms. Walker" or "Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq*.[2] (the "Vaccine Act" or "Program"). The petition alleges that the influenza ("flu") vaccine

---

[1] Because this unpublished ruling contains a reasoned explanation for the action in this case, I intend to post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** However, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id*.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

1

Ms. Walker received on September 2, 2017 caused her to suffer a Shoulder Injury Related to Vaccine Administration ("SIRVA"). Pet. at 1.

During the pendency of this matter, Petitioner submitted two affidavits that she authored as well as a letter from her husband, Larry Walker.

After carefully considering the medical records, affidavits, and documentary evidence, I find that Petitioner's left shoulder pain began the day of her vaccination.

I.   **Procedural History**

On October 30, 2018, Petitioner filed a petition alleging that she suffered from SIRVA as a result of a flu vaccine administered on September 2, 2017. Pet., ECF No. 1. Petitioner filed medical records on November 9, 2018. Exs. 1, 3, 4, 5, 6. She filed a statement of completion on that same day. ECF No. 8.

On October 18, 2019, Respondent filed a Rule 4(c) Report. ECF No. 22. Respondent's report states that Petitioner has not demonstrated that she suffered from a SIRVA Table claim, and further that she has not provided evidence that satisfies her burden of proof under *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274 (Fed. Cir. 2005). Resp's Rept. at 6-8.

I held a status conference with the parties on March 3, 2020. *See* ECF No. 27. During the status conference, I informed Ms. Widman that I wanted Petitioner to submit a supplemental affidavit indicating why she did not mention shoulder pain at any of her doctor's visits prior to January 23, 2018. *Id.* The parties also discussed the need for a determination on onset. I asked both sides to indicate whether a ruling on the record regarding onset would be acceptable. *Id.*

On March 23, 2020, Petitioner filed her supplemental affidavit. Ex. 7. On that same date, Respondent filed a status report indicating his amenability to a ruling on the record regarding onset. ECF No. 29. On May 5, 2020, Petitioner filed a letter from her husband, Larry Smith. Ex. 8. She also filed her motion for a ruling on the record on onset, along with her supporting argument. ECF No. 32. Respondent filed his response on May 22, 2020. ECF No. 33.

On May 22, 2020, Petitioner sadly passed away, and I ordered Ms. Widman to file a death certificate and a status report regarding letters of estate administration. *See* Non-PDF Order dated May 27, 2020.

This matter is now ripe for adjudication regarding onset.

II.   **Petitioner's Relevant Medical Records**

Petitioner was born in 1949. She was 67 years old on September 2, 2017, when she received the allegedly causal flu vaccination in her left deltoid at Tom Thumb Pharmacy. Ex. 1 at 3.

2

Petitioner went to Dallas Sleep on September 20, 2017 to follow up on the use of her CPAP machine. Ex. 5 at 13. There is no indication in the record that Petitioner mentioned shoulder pain during this visit.

Petitioner next sought medical treatment on September 21, 2017. She was seen at the Digestive Health Associates of Texas for a colonoscopy consultation. Ex. 3 at 475. During this visit, Petitioner answered general questions about her health. The "Musculoskeletal" portion of the Review of Systems section of this record indicates that Petitioner denied having swollen joints, joint stiffness, or muscle pain. *Id.* at 476.

On October 27, 2017, Petitioner visited Dr. Gregory Ennis at Village Health Partners for a follow up regarding her hyperlipidemia. Ex. 3 at 22. There is no indication in the record that Petitioner mentioned shoulder pain during this visit.

Petitioner visited her dermatologist for an annual skin check on November 17, 2017. Ex. 3 at 470. There is no indication in the record that Petitioner mentioned shoulder pain during this visit.

On January 23, 2018, Petitioner emailed her PCP, Dr. Ennis. She wrote, "I had a flu shot in early September, and my arm has hurt since that time. It has not improved, and in fact is getting worse. It's beginning to wake me in the night and is starting to limit my use." Ex. 3 at 16. She requested a medical appointment.

Petitioner visited Dr. Ennis on February 1, 2018. The reason for the appointment is listed as arm pain. Ex. 3 at 13. The notes from this visit state, "Patient states that she got a flu shot in 9/2/18 [sic], she states that her arm has been hurting since then, pain was so bad that he [sic] almost fell out, pt not abe [sic] to lift, move her arm back or up. Hurt [] when she was given the shot (which is not normal). She says the pain even radiates down into left arm/hand at times. Has not tried heat or ice. Just started taking advil at night which helps." *Id.* She was scheduled to follow up in three months. *Id.* at 14-15.

On that same day, February 1, 2018, Petitioner also visited Dallas Sleep for a follow up on her sleep apnea. Ex. 5 at 17-18. The Musculoskeletal section of this record indicates that Petitioner denied having stiff/sore joints and muscle pain. *Id.* at 18. There is no indication in the record that Petitioner mentioned shoulder pain during this visit.

Petitioner emailed Dr. Ennis on February 21, 2018. She stated, "When I was in a few weeks ago with my left arm pain, you said if it wasn't gone in a couple of weeks to let you know. I'm letting you know. It still hurts!" Ex. 3 at 9. Based on this correspondence, Dr. Ennis placed a referral into the system to Tarpon Orthopedics. *Id.*

On March 2, 2018, Petitioner visited Dr. Daniel Sunwoo at Tarpon Orthopedics for left upper arm pain. Ex. 6 at 19. Her chief complaint is listed as "left upper arm pain at the deltoid muscle." *Id.* The onset is specified at "9/2/2017". *Id.* The assessment states that "68 year old female presents with left upper arm pain. Pain started on 9/2/17 after having a flu vaccination."

3

*Id.* at 21. Dr. Sunwoo assessed her with left shoulder pain and left adhesive capsulitis. *Id.* He referred her to PT. *Id.*

Petitioner began PT on March 19, 2018. Ex. 4 at 39. During this initial visit, Petitioner stated that "she noticed increased shoulder pain post flu shot." *Id.* Specifically, when completing the rehabilitation questionnaire, Petitioner indicated that her pain began on "9-2-17". *Id.* at 27. In responding to the question, "How did the injury/problem occur?" Petitioner wrote, "flu shot". *Id.* Petitioner completed a total of nine PT sessions; the last session took place on April 5, 2018. *Id.* at 3. She was discharged from PT on May 15, 2018 because she did not return after her last session. *Id.* at 1.

### III.   The Petition, Affidavits, and Documentary Evidence

The Petition filed in this matter states that Petitioner experienced a SIRVA following her September 2, 2017 flu vaccination. Pet. at 1.

#### A.   Affidavits and Documentary Evidence

##### 1. Affidavit of Ms. Martha Walker

In support of her Petition, Ms. Walker signed her affidavit on October 29, 2018. Ex. 2. In it, she stated that her arm began to hurt immediately after she received her flu vaccination on September 2, 2017. *Id.* at 1. For five days after she received the vaccine, she stated that she could barely move her arm. *Id.* Then after the first five days passed, her arm only hurt if she "touched it or bent it a certain way." *Id.* at 2.

After a couple of months, when the pain had not subsided, Petitioner stated that she went to see her primary care doctor, who referred her to an orthopedist. Ex. 2 at 2. Dr. Sunwoo referred her to physical therapy. *Id.* Petitioner stated that PT did not improve her pain. *Id.*

Petitioner stated that the pain from her arm has prevented her from engaging in the activities she once enjoyed. Ex. 2 at 2. She stated that her arm now aches when she is not moving it. *Id.*

##### 2. Supplemental Affidavit of Ms. Martha Walker

Petitioner completed her supplemental affidavit on March 21, 2020. Ex. 7. In this document, Petitioner stated that five days after she received her flu vaccination, her husband went to see the nurse who administered the vaccine at Tom Thumb Pharmacy. *Id.* at 1. He told the nurse that Petitioner was still experiencing pain. *Id.* According to Petitioner, the nurse told her husband that the pain was normal and would go away. *Id.*

Petitioner explained that she did not speak with a health care professional about her arm pain because she believed the nurse and thought that her pain would dissipate. Ex. 7 at 1. By January of 2018, Petitioner stated that she could not stand the pain any longer and requested an appointment with Dr. Ennis. *Id.*

### 3. Letter from Mr. Larry Smith

Mr. Smith is Petitioner's husband. He wrote a short note to Petitioner's attorney. Ex. 8. In this document, Mr. Smith stated that he went to visit the nurse after a few weeks because Petitioner was still experiencing pain. *Id.* According to Mr. Smith, "the nurse said it was normal." *Id.*

### IV. Legal Standards Regarding Fact Finding

Petitioner bears the burden of establishing her claim by a preponderance of the evidence. 42 U.S.C. § 300aa-13(1)(a). A petitioner must offer evidence that leads the "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he or she] may find in favor of the party who has the burden to persuade the judge of the fact's existence." *Moberly v. Sec'y of Health & Human Servs.*, 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (citations omitted).

In order to make a determination concerning factual issues, such as the timing of onset of petitioner's alleged injury, the special master should first look to the medical records. "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993); *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2006 WL 3734216, at *8 (Fed. Cl. Spec. Mstr. Nov. 29, 2006). Medical records created contemporaneously with the events they describe are presumed to be accurate and complete. *Doe/70 v. Sec'y of Health & Human Servs.*, 95 Fed. Cl. 598, 608 (2010).

Contemporaneous medical records generally merit greater evidentiary weight than oral testimony; this is particularly true where such testimony conflicts with the record evidence. *Cucuras*, 993 F.2d at 1528; *see also Murphy v. Sec'y of Health & Human Servs.*, 23 Cl. Ct. 726, 733 (1991), *aff'd*, 968 F.2d 1226 (Fed. Cir. 1992) (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 396 (1947) ("It has generally been held that oral testimony which is in conflict with contemporaneous documents is entitled to little evidentiary weight")). "Written documentation recorded by a disinterested person at or soon after the event at issue is generally more reliable than the recollection of a party to a lawsuit many years later." *Reusser v. Sec'y of Health & Human Servs.*, 28 Fed. Cl. 516, 523 (1993).

However, there are situations in which compelling oral testimony may be more persuasive than written records--for instance in cases where records are found to be incomplete or inaccurate. *Campbell*, 69 Fed. Cl. at 779 ("like any norm based upon common sense and experience, this rule should not be treated as an absolute and must yield where the factual predicates for its application are weak or lacking"); *Lowrie*, 2005 WL 6117475, at *19 ("Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent") (quoting *Murphy*, 23 Cl. Ct. at 733).

5

When witness testimony is used to overcome the presumption of accuracy afforded to contemporaneous medical records, such testimony must be "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.*, No. 11-685V, 2013 WL 1880825 (Fed. Cl. Spec. Mstr. Apr. 10, 2013)(citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). In determining the accuracy and completeness of medical records, the Court of Federal Claims has listed four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1334 (Fed. Cir. 2014). A special master making a determination whether to afford greater weight to contemporaneous medical records or other evidence, such as testimony at a hearing must have evidence suggesting the decision was a rational determination. *Burns by Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993).

### V.     Findings of Fact

The issue to be addressed is when Petitioner's symptoms of left shoulder pain began. Petitioner has the burden of demonstrating the facts necessary for entitlement to an award by a preponderance of the evidence. § 300aa-12(a)(1)(A). Under that standard, the existence of a fact must be shown to be "more probable than its nonexistence." *In re Winship*, 397 U.S. 358, 371 (1970) (Harlan, J., concurring). In light of the medical records, affidavits, and other documentary evidence presented in this case, and after my careful examination of the record as a whole, I find there is preponderant evidence that the onset of Petitioner's symptoms of left shoulder pain began on September 2, 2017, the day of vaccination.

In her affidavits, Petitioner attests that she experienced pain the same day that she received her flu vaccination. I find her statements on this point to be credible, and further find this evidence is corroborated by her medical records.

Petitioner attended four medical appointments between the date of vaccination and the date she emailed Dr. Ennis; she did not mention the pain in her shoulder during any of those four visits. Additionally, in several of these appointments, the records indicate that Petitioner was generally not experiencing joint pain. I note that I would not expect Petitioner to discuss shoulder pain at an appointment with Dallas Sleep, where she was scheduled for a follow up regarding her CPAP machine, at a colonoscopy consult, or at an appointment with her dermatologist. *See, e.g.*, *Williams v. Sec'y of Health and Human Servs.*, 2019 U.S. Claims LEXIS 176 at *23 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (finding onset of SIRVA within 48 hours despite four intervening medical encounters that did not reference shoulder pain because the medical appointments "were for specific medical concerns unrelated to petitioner's left shoulder concern."). This point is reinforced by the fact that Petitioner did not mention shoulder pain when she made an additional visit to Dallas Sleep, <u>the same day</u> she had her first medical visit with Dr. Ennis to discuss her shoulder pain.

The appointment on October 27, 2017 was not with a specialist. This medical appointment was with Dr. Ennis (her PCP) to follow up regarding her hyperlipidemia. A visit with a PCP seems to be a more likely time to discuss general medical concerns. Petitioner explained that she did not report pain at these initial appointments (to include the October 27, 2017 appointment with Dr. Ennis) because the nurse who administered her flu vaccination said that the pain was normal and would go away. Petitioner explained that when she was unable to tolerate the pain any longer, she sought medical attention. I find this explanation to be credible.

Petitioner emailed her PCP on January 23, 2018. In this email, she stated "I had a flu shot in early September, and my arm has hurt since that time." Ex. 3 at 16. While this statement regarding onset was delayed, it was both precise and unequivocal. Additionally, during Petitioner's medical appointments after January 23, 2018, she consistently attributed her left shoulder pain to her flu shot. *See* Ex. 6 at 19; Ex. 4 at 27, 39. Accordingly, Petitioner's medical records support a finding that Petitioner experienced pain on the same day as her flu vaccination.

### VI.   Conclusion

I find that the affidavits and documentary evidence submitted by and on behalf of Petitioner and the medical records work in concert to provide preponderant evidence that Petitioner's left shoulder pain began on September 2, 2017.

The following is therefore ORDERED:

By no later than **Monday July 27, 2020**, Petitioner and Respondent shall file a joint status report updating me on their proposed next steps in the case based on the facts articulated in this ruling.

**IT IS SO ORDERED.**

                                                                **s/ Katherine E. Oler**
                                                                Katherine E. Oler
                                                                Special Master